# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 09-60298-CIV-HUCK/O'SULLIVAN

SHERIDAN HEALTHCORP, INC., a Florida
corporation, individually and on behalf of its affiliates
and subsidiaries,

       Plaintiff,

vs.

UNITED HEALTHCARE OF FLORIDA, INC.,
a Florida corporation, and INGENIX, INC.,
a Delaware corporation,

       Defendants.
_____/

UNITED HEALTHCARE OF FLORIDA, INC.,
a Florida corporation,

       Defendant/Counter-Plaintiff,

vs.

SHERIDAN HEALTHCORP, INC., a Florida
corporation, individually and on behalf of its affiliates
and subsidiaries,

       Plaintiff/Counter-Defendant.
_____/

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page(s)

APPLICABLE LEGAL STANDARD ........................................................................... 1

A.    SHERIDAN'S CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT MUST BE DISMISSED .............................................................................................. 2

    1.    Plaintiff's Claim Is Preempted By ERISA............................................... 2

    2.    Plaintiff Failed To State A Claim For Breach Of An Implied-in-Fact Contract ... 5

B.    SHERIDAN'S CLAIM FOR TORTIOUS INTERFERENCE MUST BE DISMISSED . 6

    1.    Sheridan Failed To Plead That United's Alleged Interference Caused The Termination Of Any Relationship .............................................................. 6

    2.    United's Alleged Tortious Interference Is Privileged By United's Business Purposes ............................................................................................................ 6

    3.    Sheridan's Relationships Are Too Speculative To Form The Basis For A Tortious Interference Claim .......................................................................................... 8

C.    SHERIDAN FAILED TO ADEQUATELY PLEAD DEFAMATION ........................... 8

    1.    Sheridan Failed To Plead Special Damages .......................................... 9

    2.    United's Statements Are "Pure Opinion" And Therefore Cannot Be The Basis For A Defamation Action ...................................................................................... 9

    3.    United's Statements Are Protected By The Mutuality Of Interest Qualified Privilege ............................................................................................................ 10

D.    SHERIDAN HAS FAILED TO ADEQUATELY PLEAD DEFAMATION PER SE ... 12

E.    SHERIDAN'S MISAPPROPRIATION OF TRADE SECRETS CLAIM IS FATALLY FLAWED AND MUST BE DISMISSED ........................................................... 13

F.    SHERIDAN'S CLAIM FOR VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT MUST BE DISMISSED ................................. 15

    1.    Sheridan's FDUTPA Claim Is Preempted By Florida's Uniform Trade Secrets Act ................................................................................................................ 15

    2.    Sheridan Has Failed To Adequately Plead A Violation Under FDUTPA ........... 16

G.    SHERIDAN'S CLAIM FOR DECLARATORY RELIEF MUST BE DISMISSED ..... 19

CONCLUSION................................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Abruzzo v. Haller*, 603 So. 2d 1338 (Fla. 1st DCA 1992) ........................................................ 19

*Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329 (S.D. Fla. 2002).............. 15, 16

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170
    (M.D. Fla. 2005) ................................................................................................................ 16

*Am. Med. Intern., Inc. v. Scheller*, 462 So. 2d 1 (Fla. 4th DCA 1984)........................................ 6

*Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567 (M.D. Fla.
    1996) ......................................................................................................................... 12, 13 14

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .................................................................. 1, 6

*Bickley v. v. Caremark Rx, Inc.*, 461 F.3d 1325 (11th Cir. 2006)................................................. 3

*Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207 (11th Cir. 1999)............................... 2, 3

*Campbell v. LoPucki*, 345 So. 2d 860 (Fla. 1st DCA 1977)........................................................ 10

*City First Mortgage Corp. v. Barton*, 988 So. 2d 82 (Fla. 4th DCA 2008)................................ 17

*Coral Gates Props. v. Hodes*, 59 So. 2d 630 (Fla. 1952) .......................................................... 19

*Corporate Financial, Inc. v. Principal Life Ins. Co. John Hancock Mutual Life Ins.
    Co. v. Zalay*, 581 So. 2d 178 (Fla. 2d DCA 1991) .......................................................... 11

*Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955 (11th Cir. 2008) ................................................ 2

*Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271 (S.D. Fla. 2001).. 13, 14

*Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334
    (S.D. Fla. 1999)................................................................................................................. 17

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001)................................................................................... 3

*Ethan Allen v. Georgetown Manor, Inc.*,  647 So. 2d 812 (Fla. 1994) ......................................... 8

*Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.*, 687 So. 2d 821 (Fla. 1996)............................ 8

*Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311 (Fla. 4th DCA 1998) ...... 17

*Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024 (11th Cir. 1997.............................................. 3

*Fridovich v. Fridovich*, 598 So. 2d 65 (Fla. 1992) ....................................................... 11

*Frieder v. Prince*, 308 So. 2d 132 (Fla. 3d DCA 1975) ......................................... 9, 10

*From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52 (Fla. 1st DCA 1981)............................ 9, 10

*Hoch v. Rissman, Weisberg, Barrett,* 742 So. 2d 451 (Fla. 5th DCA 1999) ...................... 9

*Horizons Rehabilitation, Inc. v. Health Care and Retirement Corp.*, 810 So. 2d 958
(Fla. 5th DCA 2002) ........................................................................................ 7

*Ingersoll Rand Co. v. McClendon*, 498 U.S. 133 (1990).............................................. 3

*John Hancock Mutual Life Ins. Co. v. Zalay,* 581 So. 2d 178 (Fla. 2d DCA 1991)............... 11

*Kearney v. U.S. Healthcare, Inc.*, 859 F. Supp. 182 (E.D. Pa. 1994)............................ 4

*Kelner v. Woody,* 399 So. 2d 35 (Fla. 3d DCA 1981) ................................................ 19

*Kemp v. International Bus. Machs. Corp.*, 109 F.3d 708 (11th Cir. 1997) ...................... 2

*Kia Motors Am. Corp. v. Butler,* 985 so. 2d 1133 (Fla. 3d DCA 2008) ....................... 17

*Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994).............................. 3

*LRX, Inc. v. Horizon Assocs. Joint Venture,* 842 So. 2d 881 (Fla. 4th DCA 2003) ............... 9

*Macias v. HBC of Fla., Inc.*, 694 So. 2d 88 (Fla. 3d DCA 1997)................................ 18

*Martens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ..................................................... 3

*Mason v. Cont'l Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985) .................................... 3

*McCulloch v. PNC Bank Inc.*, 298 F.3d 1217 (11th Cir. 2002)................................... 1

*McCurdy v. Collis,* 508 So. 2d 380 (Fla. 1st DCA 1992) .......................................... 7

*Midtown Realty, Inc. v. Hussain,* 712 So. 2d 1249 (Fla. 3d DCA 1998).......................... 5

*Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841 (Fla. 4th DCA 2002)............... 8

*Mills v. Foremost Ins. Co.,* 511 F.3d 1300 (11th Cir. 2008)...................................... 1

*Montgomery v. Knox,* 3 So. 211 (Fla. 1887) ........................................................ 11

*Morse v. Ripken,* 707 So. 2d 921 (Fla. 4th DCA 1998)......................................... 9, 10

*NetworkIP, LLC v. Spread Enter., Inc.*, 922 So. 2d 355 (Fla. 3d DCA 2006) ........................ 6, 7

*Nodar v. Galbreath*, 462 So. 2d 803 (Fla. 1984) ................................................... 10, 11

*Papasan v. Allain*, 478 U.S. 265 (1986) .................................................................... 1

*Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309 (11th Cir. 2000) .................................. 3

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987) ........................................................ 3

*Piver v. Hoberman*, 220 So. 2d 408 (Fla. 3d DCA 1969)................................................... 9

*Pomeroy v. Johns Hopkins Med. Servs.*, 868 F. Supp. 110 (D. Md. 1994) ................................ 4

*Porkolab v. Smithbay Homes, Inc.*, 640 So. 2d 195 (Fla. 3d DCA 1994) ................................. 19

*Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126 (Fla. 1st DCA 1997) ...................................... 5

*Rasmussen v. Collier County Publ'g Co.*, 946 So. 2d 567 (Fla. 2d DCA 2006) .................... 9, 10

*Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15 (Fla. 2d DCA 1991) ................... 5

*Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984)......................................... 17

*Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539 (M.D. Fla. 1993) ............................... 11

*Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000)................................................. 18

*Somoano v. Ryder Sys., Inc.*, 6 F. Supp. 2d 1342 (S.D. Fla. 1998).......................................... 3

*Springer v. Wal-Mart Assocs. Group Health Plan*, 908 F.2d 897 (11th Cir. 1990) ................... 3

*St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.*,
    784 So. 2d 500 (Fla. 5th DCA 2001) ................................................................. 8

*Stembridge v. Mintz*, 652 So. 2d 444 (Fla. 3d DCA 1995)........................................... 9

*Sterpetti v. E-Brands Acquisition, LLC*, No. 6:04-CV-1843, 2006 WL 1046949
    (S.D. Fla. 2006)................................................................................. 14

*Stewart v. Sun Sentinel*, 695 So. 2d 360 (Fla. 4th DCA 1997) .................................... 9

*Strickland v. U.S.*, 382 F. Supp. 2d 1334 (M.D. Fla. 2005)......................................... 5

*Tamiami Trail Tours, Inc. v. Cotton*, 432 So. 2d 148 (Fla. 1st DCA 1983) ................................ 7

*University Creek Assocs. II Ltd. v. Boston American Financial Group, Inc.*,
    100 F. Supp. 2d 1337 (S.D. Fla. 1998) ............................................................. 6

iv

*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) ............................................................ 1

*Williams v. Wright*, 927 F.2d 1540 (11th Cir. 1991) ...................................................... 4

*Wolfson v. Kirk*, 273 So. 2d 774 (Fla. 4th DCA 1973) .................................................. 9

*Yell v. Healthmark of Walton, Inc.*, 772 So. 2d 568 (Fla. 1st DCA 2000).................................. 19

## STATUTES

19 Fla. Jur. 2d Defamation and Privacy § 9 (2008) ....................................................... 12

32 Fla. Jur. 2d Interference § 11 (2008)....................................................................... 7

Fed. R. Civ. P. 8 ................................................................................................... 2

Fed. R. Civ. P. 9(g) ............................................................................................... 9

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1

Fla. Stat. § 501.204(1)........................................................................................... 16

Fla. Stat. § 501.211(2)....................................................................................... 16, 18

Fla. Stat. § 688.002(1)........................................................................................... 15

Fla. Stat. § 688.002(2)........................................................................................... 14

Fla. Stat. § 688.002(2)(a)........................................................................................ 15

Fla. Stat. § 688.002(4)........................................................................................... 14

Fla. Stat. § 688.002(4)(b)........................................................................................ 14

Fla. Stat. § 688.008 .............................................................................................. 15

Fla. Stat. § 688.008(1)....................................................................................... 15, 16

29 U.S.C. § 1144(a) ............................................................................................... 3

## OTHERS

145 Cong. Rec. H8155-05 (daily ed., Sept. 14, 1999)...................................................... 2

*Corbin on Contracts* § 562 (1960)............................................................................. 5

Defendants United Healthcare of Florida, Inc. ("United") and Ingenix, Inc. ("Ingenix"), hereby respectfully submit this memorandum of law in support of their Motion to Dismiss Sheridan Healthcorp, Inc.'s ("Sheridan") Amended Complaint.  For the reasons set forth below, Sheridan's Amended Complaint should be dismissed.

## APPLICABLE LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), Courts must accept all well-pleaded facts alleged by the plaintiff as true;[1] however, the Court need not assume the truth of a plaintiff's legal or conclusory allegations, nor is the plaintiff entitled to the benefit of having the Court view unwarranted deductions of fact or argumentative inferences in their favor.[2]  As the United States Supreme Court has noted, "courts are *not* bound to accept as true a legal conclusion couched as a factual allegation."[3]

The Supreme Court recently provided further guidance on the motion to dismiss standard in its decision in *Bell Atlantic Corp. v. Twombly*.[4]  In *Twombly*, the Court held that a plaintiff must provide the grounds upon which its claim rests through "*factual allegations* [sufficient] to raise a right to relief above the speculative level."[5]  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6]  The Eleventh Circuit has

---

[1] *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1220 (11th Cir. 2002).

[2] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[3] *Id.* (emphasis added).

[4] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).

[5] *Id.* at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)) (emphasis added); *see also Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  As the Supreme Court recognized, there are very real time and money expenditures associated with wide-ranging discovery that can be imposed even in cases with little merit; thus, in cases where, as here, "the allegations of a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 127 S. Ct. at 1966.

[6] *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008); *Twombly*, 127 S. Ct. at 1964-65 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quoting *Papasan*, 478 U.S. at 286).

made clear that *Twombly*'s more meaningful standard for pleading under Fed. R. Civ. P. 8 applies to *all* claims, not just conspiracy or antitrust claims.[7]

## A.   SHERIDAN'S CLAIM FOR BREACH OF IMPLIED-IN-FACT CONTRACT MUST BE DISMISSED

### 1.   Plaintiff's Claim Is Preempted By ERISA

The vast majority of Americans receive their health care benefits through employee benefit plans that are governed by ERISA ("Employer Plans"). *See, e.g.*, 145 Cong. Rec. H8155-05 (daily ed., Sept. 14, 1999) (statement of Rep. Knollenberg) (noting that "nearly 80 percent of the workers in this country" receive their health coverage through ERISA plans). As the Eleventh Circuit has recognized, the Supreme Court has held that Congress created complete preemption[8] in ERISA Section 502(a), which provides the exclusive cause of action for the recovery of benefits due under an Employer Plan. *Butero*, 174 F.3d at 1211 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). Under the complete preemption doctrine, state law claims that seek relief available under Section 502(a) are re-characterized by the Court as ERISA claims. *Kemp v. International Bus. Machs. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997). Thus, the Eleventh Circuit has held, for example, that state law claims for breach of contract (*i.e.*, breach of the Employer Plan) are, in essence, claims to recover benefits due under the terms of an Employer Plan that are consequently completely preempted under Section 502(a). *See Butero*, 174 F.3d at 1213.

Sheridan's claim for alleged breach of implied-in-fact contract seeks the payment of benefits under Employer Plans and at its core is a claim for breach of the Employer Plans by United's failure to pay Sheridan the full amount it allegedly owes for the provision of medical

---

[7] *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 & n.1 (11th Cir. 2008).

[8] Complete preemption applies where Congress preempts an area of the law so completely that any complaint raising claims in that area is necessarily federal in character, even where the face of the complaint does not plead federal claims. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211-12 (11th Cir. 1999) (citation omitted).

services to its members.    As a result, that claim is completely preempted by Section 502(a) of
ERISA.  *Id.*; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987) (overruled on other grounds
by *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003)); *Metropolitan Life Ins. Co.*,
481 U.S. at 66, (finding breach of contract claims completely preempted).    Since Sheridan's
claim for breach of implied-in-fact contract is completely preempted by ERISA, and because
Sheridan has not exhausted its administrative remedies under ERISA, its claim must be
dismissed.[9]    Any claim that is completely preempted by Section 502(a) of ERISA is also
necessarily defensively preempted by Section 514 (a) of ERISA.[10]  *Butero*, 174 F.3d at 1215.

Additionally, state-law claims that are not "completely preempted" may nonetheless be
barred by conflict preemption under Section 514(a) if they "relate to" an Employer Plan.[11]  As
the Supreme Court emphasized, "[w]e have observed repeatedly that this broadly worded
provision is 'clearly expansive.'"[12]  A state law "relates to" an ERISA benefit plan "in the
normal sense of the phrase, if it has *a connection with or reference to* such a plan."[13]  Thus,
"ERISA preempts all state laws insofar as they apply to employee benefit plans even if those

---

[9] *See, e.g., Bickley v. v. Caremark Rx, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006); *Perrino v. Southern Bell Tel. & Tel. Co.*,, 209 F.3d 1309, 1315 (11th Cir. 2000); *Springer v. Wal-Mart Assocs. Group Health Plan*, 908 F.2d 897 (11th Cir. 1990); *Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1225-27 (11th Cir. 1985), *cert denied*, 474 U.S. 1087 (1986).

[10] Section 514(a) of ERISA preempts "any and all state laws insofar as they may now or hereafter relate to an ERISA plan." 29 U.S.C. § 1144(a).

[11] *See* 29 U.S.C. § 1144(a); *Pilot Life Ins. Co.*, 481 U.S. at 44-45; *Butero*, 174 F.3d at 1211-12; *Lordmann Enters. v. Equicor, Inc.*, 32 F.3d 1529, 1532 (11th Cir. 1994).

[12] *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (quoting *New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)); *see also Ingersoll Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (finding that ERISA preempted state law wrongful discharge claim), *superseded on other grounds, Martens v. Hewitt Assocs.*, 508 U.S. 248 (1993).

[13] *Pilot Life Ins. Co.*, 481 U.S. at 47 (citations omitted) (emphasis added); *see also Franklin v. QHG of Gadsen, Inc.*, 127 F.3d 1024, 1028 (11th Cir. 1997); *Somoano v. Ryder Sys., Inc.*, 6 F. Supp. 2d 1342, 1344 (S.D. Fla. 1998).

laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans."[14]

In its Amended Complaint, Sheridan asserts that United failed to pay the full amount it allegedly owes for the provision of medical services to its members. *See* Am. Compl. at ¶ 128. United would incur liability for its failure to reimburse Sheridan, if at all, only where it has an obligation to pay for its members' treatment. Sheridan's claims for payment in this case are for services allegedly rendered by Sheridan to United members, who receive their medical benefits pursuant to employee benefit plans. Specifically, Sheridan alleges that, by pre-authorizing medical procedures, United accepts its Continuing Offer. Pre-authorization of a procedure, however, requires United to review and analyze its members' benefit plans.

As a result, United's obligation to pay for those services, if any, and its calculation of the proper reimbursement rates for those services necessarily depends upon an interpretation of its members' respective ERISA benefit plans. Those ERISA benefit plans contain the applicable scope of coverage and applicable payment methodologies for payment of medical services received by the respective member. Therefore, any analysis of Sheridan's claims requires an examination of the benefits offered under the members' ERISA benefit plans and United's duties in administering those benefits. As a result, Sheridan's claim for breach of implied-in-fact contract is preempted by ERISA and must be dismissed.

---

[14] *Williams v. Wright*, 927 F.2d 1540, 1549 (11th Cir. 1991) (holding that state law breach of contract cause of action preempted under ERISA) (quoting *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir. 1987); *see also Pomeroy v. Johns Hopkins Med. Servs.*, 868 F. Supp. 110, 112 (D. Md. 1994) ("[S]tate law *claims* which relate to the administration of an ERISA-governed plan, but which arise under general state *laws* which themselves have no impact on employee benefit plans, fall within the scope of ERISA preemption.") (emphasis in original). ERISA also preempts all state laws that "relate to" an employee benefit plan "even when an aggrieved party will have no adequate remedy as a consequence." *Kearney v. U.S. Healthcare, Inc.*, 859 F. Supp. 182, 184 (E.D. Pa. 1994) (holding that misrepresentation, negligence, and breach of contract claims alleging that HMO failed to provide promised benefits or misrepresented what benefits would be provided were preempted by ERISA) (citing *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 11 (2d Cir. 1992)).

**2.**   **Plaintiff Failed To State A Claim For Breach Of An Implied-in-Fact Contract**

Mutual assent is an essential element for contract formation; Florida courts have held that an implied-in-fact contract must "rest upon the assent of the parties." *See Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So. 2d 15, 17 (Fla. 2d DCA 1991) (dismissing implied-in-fact contract claim because the defendant never assented to the work).[15] In the absence of an express agreement, courts must "examine and interpret the parties' conduct to give definition to their unspoken agreement." *See Corbin on Contracts* § 562 (1960).

Contrary to Sheridan's allegations, the Amended Complaint makes clear that United did not agree to pay 100% of Sheridan's billed charges. Instead, United made only "partial payments on the claims," thereby demonstrating its intent to reimburse Sheridan as it would any other non-participating physician group. *See Am. Compl. at ¶ 129.* Thus, as alleged in the Amended Complaint, United's conduct unequivocally demonstrates that it did not agree to the price term in Sheridan's Continuing Offer. *See Am. Compl. at ¶ 27.*

Moreover, Sheridan's Complaint alleges that an implied-in-fact contract was formed while the parties were negotiating the terms of a going forward contract. Indeed, the Continuing Offer, which is attached to the Amended Complaint as Exhibit D, plainly states that Sheridan was willing "to engage in productive discussions with United in an effort to reach an agreement." Am. Compl. at Ex. D. Thus, as a matter of law, there could be no meeting of the minds on the terms of Sheridan's continuing offer, and the breach of implied-in-fact contract claim must be dismissed.[16]

---

[15] To state a claim for a breach of an implied-in-fact contract, the same basic elements must be pled as those of a breach of an express contract: (1) a mutual intent to contract; (2) consideration; (3) an offer and acceptance; and (4) breach. *Rabon v. Inn of Lake City, Inc.*, 693 So. 2d 1126 (Fla. 1st DCA 1997); *Strickland v. U.S.*, 382 F. Supp. 2d 1334 (M.D. Fla. 2005).

[16] *See Midtown Realty, Inc. v. Hussain*, 712 So. 2d 1249, 1251 (Fla. 3d DCA 1998) ("[W]here it appears that the parties are continuing to negotiate as to the essential terms of an agreement, there can be no meeting of the minds.");

**B.      SHERIDAN'S CLAIM FOR TORTIOUS INTERFERENCE MUST BE DISMISSED**

To state a claim for tortious interference with an advantageous business relationship, a plaintiff must allege:   (i) the existence of a business relationship; (ii) knowledge of the relationship on the part of the defendant; (iii) an intentional and unjustified interference with the relationship by the defendant; and (iv) damages to the plaintiff as a result of the breach of the relationship.[17]   In this case, Sheridan has failed to adequately plead the existence of a relationship, an unjustified interference or damages.

### 1.      Sheridan Failed To Plead That United's Alleged Interference Caused The Termination Of Any Relationship

Sheridan failed to allege *any facts* showing that United's statements have actually caused the termination of a single business relationship or expectancy.   "Unsuccessful interference is simply not the kind of interference upon which a tort may be founded or upon which damages may be assessed."   *Am. Med. Intern., Inc. v. Scheller,* 462 So. 2d 1, 9 (Fla. 4th DCA 1984). Sheridan's conclusory allegation that, "[a]s a result of United's actions described above, Sheridan has been, and continues to be, damaged," Am. Compl. at ¶ 148, is insufficient to state a claim.[18]  As a result, Sheridan's claim for tortious interference must fail.

### 2.      United's Alleged Tortious Interference Is Privileged By United's Business Purposes

To plead a prima facie case of tortious interference with a business relationship, a plaintiff must establish that the defendant intentionally and unjustifiably interfered with the

---

see also *University Creek Assocs. II Ltd. v. Boston American Financial Group, Inc.,* 100 F. Supp. 2d 1337, 1340 (S.D. Fla. 1998) ("[W]here essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract.").

[17] *See NetworkIP, LLC v. Spread Enter., Inc.,* 922 So. 2d 355, 358 (Fla. 3d DCA 2006).

[18] A court need not accept internally inconsistent factual claims, conclusory allegations, unwarranted deductions, or mere legal conclusions made by a party. *See Twombly,* 127 S. Ct. 1965.

relationship, *in the absence of any justification or privilege*."[19]   Under Florida law, a defendant has a qualified privilege against tortious interference if its acts are intended to protect or promote its legitimate financial interests.[20]   United's communications with its members and participating providers explicitly state that their purpose is to ensure that its members "receive the highest level of benefits," and "do not encounter higher out-of-pocket expenses in the form of higher coinsurance and deductibles."   *See* Am. Compl. at Ex. F-G.   As a result, United's statements are clearly justified.

Sheridan alleges that United "interfered in part by '*reminding*' these physicians and surgeons" of their contractual obligation to refer patients to other participating providers whenever possible.   Am. Compl. at ¶ 145.   But under Florida law, a party cannot be held liable for insisting upon its legal rights in a permissive way.[21]   United's statements to participating physicians about their contractual obligations are undoubtedly permissible.

Furthermore, the qualified privilege to interfere with a contractual or advantageous business relationship is not negated by allegations or evidence of malice.   *McCurdy v. Collis,* 508 So. 2d 380, 383-84 (Fla. 1st DCA 1992) ("A qualified privilege to interfere is not negated by concomitant evidence of malice.").   It is only when malice is the sole basis for interference that it will be actionable.   *Id.* ("The qualified privilege is only overcome when malice is the *sole* basis for a defendant's interference.").   Sheridan's conclusory allegation that United's "sole purpose of providing such information to the physicians is to cause injury to Sheridan in its business and

---

[19] *Tamiami Trail Tours, Inc. v. Cotton*, 432 So. 2d 148 (Fla. 1st DCA 1983), *aff'd in part, disapproved in part on other grounds,* 463 So. 2d 1126 (Fla. 1985) (emphasis added).   In its Amended Complaint, Sheridan alleges only that United's statements were communicated to "third parties to cease or limit their business relationship with Sheridan."   *See* Am. Compl. at ¶ 143.

[20] *See NetworkIP, LLC v. Spread Enter., Inc.*, 922 So. 2d 355, 358 (Fla. 3d DCA 2006); *Horizons Rehabilitation, Inc. v. Health Care and Retirement Corp.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002).   *See generally* 32 Fla. Jur. 2d Interference § 11 (2008).

[21] *See Horizons Rehabilitation, Inc.*, 810 So. 2d 958, 964 (Fla. 5th DCA 2002).

business relationships rather than out of a legitimate concern for its members," is flatly contradicted by the contents of United's communications.

### 3. Sheridan's Relationships Are Too Speculative To Form The Basis For A Tortious Interference Claim

To maintain an action for tortious interference with a business relationship, the plaintiff must allege a business relationship with identifiable customers. *Ferguson Transp., Inc. v. N. Am. Van Lines, Inc.,* 687 So. 2d 821 (Fla. 1996). Sheridan's Amended Complaint alleges that it has an advantageous relationship with its patients, referring providers and the facilities at which they provide services. Sheridan's relationship with past patients and physicians who previously referred patients to Sheridan is too speculative to form the basis of a claim for tortious interference with a business relationship.[22] Sheridan has no identifiable agreement with past customers and the mere possibility that some of its past patients may choose to receive healthcare services from Sheridan again cannot form the basis for a tortious interference claim. *See St. Johns River Water Mgmt. Dist. v. Fernberg Geological Servs., Inc.,* 784 So. 2d 500, 504 (Fla. 5th DCA 2001) ("The alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights.") (internal quotation omitted). Likewise, Sheridan has not alleged that it has actual or identifiable agreements with referring physicians.

### C. SHERIDAN FAILED TO ADEQUATELY PLEAD DEFAMATION

To state a claim for defamation under Florida law, a plaintiff must plead facts sufficient to demonstrate "the unprivileged publication (to a third party) of a false and defamatory statement concerning another, with fault amounting to at least negligence . . . with damage ensuing." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.,* 811 So. 2d 841, 845 (Fla. 4th DCA

---

[22] *See Ethan Allen v. Georgetown Manor, Inc.,* 647 So. 2d 812, 815 (Fla. 1994) (holding that an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement that in all probability would have been completed had defendant not interfered).

2002). Florida jurisprudence emphasizes the particular importance of courts' gatekeeping role in defamation cases, given both their "chilling effect" on free speech[23] and the reality that "the facts giving rise to the tort of defamation may be isolated with clarity."[24]

### 1. Sheridan Failed To Plead Special Damages

Under Florida law, to state a claim for defamation per quod the plaintiff must allege special damages. *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. 5th DCA 1999).[25] Sheridan's Amended Complaint merely alleges that "[a]s a result of the publication of these false statements, Sheridan has been, and continues to be, damaged." Am. Compl. at ¶ 155. This vague and conclusory allegation falls short of the threshold for pleading special damages.[26]

### 2. United's Statements Are "Pure Opinion" And Therefore Cannot Be The Basis For A Defamation Action

Under Florida law, "pure opinion" cannot form the basis for a defamation claim.[27] "Whether a statement is one of fact or one of opinion is a question of law" for resolution by courts.[28] As the *Rasmussen* court explained:

> In assessing whether an allegedly libelous statement is opinion, the court must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication. The court must consider the context in which the statement was published and accord weight to cautionary terms used by the person publishing the statement. It must take into account all of the circumstances surrounding the publication, including the medium by which it was disseminated and the audience to which it was published.

---

[23] *Stewart v. Sun Sentinel*, 695 So. 2d 360, 363 (Fla. 4th DCA 1997).

[24] *Wolfson v. Kirk*, 273 So. 2d 774, 778 (Fla. 4th DCA 1973).

[25] *Piver v. Hoberman*, 220 So. 2d 408, 409 (Fla. 3d DCA 1969) (affirming the dismissal of a complaint for defamation because it contained no allegation of special damages); *Frieder v. Prince*, 308 So. 2d 132 (Fla. 3d DCA 1975) (affirming the dismissal of a complaint because it did not state with specificity the appellant's claim of special damages).

[26] *See* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.").

[27] *See Stembridge v. Mintz*, 652 So. 2d 444, 446-47 (Fla. 3d DCA 1995); *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). This has also been described as a constitutional mandate. *See LRX, Inc. v. Horizon Assocs. Joint Venture*, 842 So. 2d 881, 885 (Fla. 4th DCA 2003) ("Statements of pure opinion are not actionable under the First Amendment."); *Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. 4th DCA 1998) (same).

[28] *Rasmussen*, 946 So. 2d at 571; *Morse*, 707 So. 2d at 922; *Stembridge*, 652 So. 2d at 447.

*Rasmussen v. Collier County Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006).[29] Here, the allegedly false and defamatory statements are United's opinions and characterizations of the status of its business relationship with Sheridan. For example, Sheridan alleges that United's belief that the "rates Sheridan demanded were neither fair nor market competitive" is defamatory, but that statement is United's opinion concerning Sheridan's rates and cannot be proven true or false. Am. Compl. at ¶ 152(c). Taking the alleged defamatory statements in context with the totality of the circumstances demonstrates that they are merely United's opinions regarding the end of its contractual relationship with Sheridan.

### 3. United's Statements Are Protected By The Mutuality Of Interest Qualified Privilege

Sheridan's Complaint also should be dismissed since United's statements are plainly protected by Florida's common law qualified privilege of "mutuality of interest." Under Florida defamation law, privilege is an affirmative defense appropriately considered on a motion to dismiss if it is evident on the face of the complaint.[30]

"[A] communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable . . ." *Nodar v. Galbreath*, 462 So. 2d 803, 809 (Fla. 1984) (internal citation omitted). The common law recognizes as privileged "communications made for bona fide commercial purposes where the interest to be protected is the recipient's" and "in business matters where

---

[29] *See also Morse*, 707 So. 2d at 922 (affirming dismissal with prejudice of defamation claim since the allegedly defamatory statements were "pure opinion" and thus, not actionable); *From*, 400 So. 2d at 57 (affirming dismissal with prejudice of defamation claim, since the complained-of statements were "privileged pure opinion and not defamatory and thus not actionable").

[30] *See, e.g., Campbell v. LoPucki*, 345 So. 2d 860 (Fla. 1st DCA 1977) (affirming grant of motion to dismiss defamation claim based on privilege); *Frieder v. Prince*, 308 So. 2d 132 (Fla. 3d DCA 1975) (affirming dismissal of defamation claim for qualified privilege when complaint failed to allege sufficient facts to show actual malice).

both parties have a corresponding interest in the matter."[31]    In *Corporate Financial, Inc. v. Principal Life Ins. Co.,* the court held that an insurance company's statements were protected by a qualified privilege based on the interest policyholders had in knowing about the termination of their agent of record.[32]    Similarly, United's members have an interest in knowing about the termination of a physician who previously participated in their health plan.[33]    Indeed, in some instances, United was directly responding to questions from members regarding its relationship with Sheridan.  *See* Am. Compl. at Ex. I.  Thus, by communicating with members and providers with whom United has an ongoing business relationship, United was protecting its own business interests and the interests of its members and in-network providers.

Sheridan cannot overcome this privilege without, *inter alia*, at least alleging that that United acted with "express malice," which it has not done. *See, e.g., Nodar*, 462 So. 2d at 810. "In overcoming a qualified privilege, a plaintiff would have to establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice – *i.e.*, that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992).[34] United's communications with its members and participating providers explicitly state that their purpose was to ensure that its members "do not encounter higher out-of-pocket expenses" and maintain the quality and efficiency of its provider network.  *See* Am. Compl. at Ex. F-G.

---

[31] *John Hancock Mutual Life Ins. Co. v. Zalay*, 581 So. 2d 178, 179 (Fla. 2d DCA 1991).

[32] *Corp. Fin., Inc. v. Principal Life Ins. Co.*, 461 F. Supp. 2d 1274, 1295 (S.D. Fla. 2006).

[33] Likewise, in *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1542-43 (M.D. Fla. 1993), the court held that a cigarette company's statements fell under a qualified privilege because a "[c]ustomer had an interest in learning what happened to a sales representative with whom she had a longstanding relationship." United's members have a similar interest in being informed that their healthcare provider is no longer in-network and that going to an out-of-network provider may subject the member to greater out-of-pocket costs.

[34] *See also Nodar*, 462 So. 2d at 811 ("[T]here must be a showing that the speaker used his privileged position to gratify his malevolence.") (internal quotation omitted); *Montgomery v. Knox*, 3 So. 211, 217 (Fla. 1887) (defining express malice as "ill will, hostility, evil intention to defame and injure").

Additionally, United was required to inform its members of Sheridan's status as a non-participating provider by its accreditation agency. *See* Am. Compl. at Ex. G.

The exhibits attached to the Amended Complaint show that United's motive was the protection of its business interests, which, taken along with the presence of a qualified privilege, defeats Sheridan's claim for defamation as a matter of law.

## D.     SHERIDAN HAS FAILED TO ADEQUATELY PLEAD DEFAMATION PER SE

Under Florida law, a publication is actionable *per se* if, when considered alone without innuendo, it charges that a person has committed an infamous crime; it charges a person with having an infectious disease; it tends to subject a person to hatred, distrust, ridicule, contempt, or disgrace; it tends to injure him or her in his or her trade or profession; or it imputes to another, conduct, characteristics, or a condition incompatible with the proper exercise of his or her lawful business, trade, profession or office.[35]   Sheridan's contention that United's statements are actionable *per se* fails for two reasons.

First, the statements identified by Sheridan as defamatory *per se* are actually "legitimate business statements" protected by Florida law.  Florida courts have held that statements made by company representatives were not defamatory *per se* where the alleged statements "were not capable of a defamatory meaning" because they appeared to be nothing more than legitimate business statements.[36]   Certain of United's communications included statements that Sheridan's demanded rates were neither fair nor market competitive and that the demanded rates far exceeded any demand by other Florida physicians.   Like the term "poor sales," United's description of Sheridan's rates as "neither fair nor market competitive" is a legitimate business

---

[35] *See* 19 Fla. Jur. 2d Defamation and Privacy § 9 (2008).

[36] *See, e.g., Anthony Distributors, Inc. v. Miller Brewing Co.*, 941 F. Supp. 1567, 1578 (M.D. Fla. 1996) (holding that defendant's use of the term "poor sales" to describe the plaintiff's performance was not defamatory *per se*. The district court reasoned that, "[o]bviously, [defendant] is in the business of selling beer and has every right to 'reasonabl[y] challenge' the performance of its distributors").

statement and not defamatory *per se*.  United is in the business of selling healthcare insurance to its members and "has every right to reasonably challenge" provider's rates, since those rates directly impact United's ability to provide its members access to affordable healthcare.  *See Anthony Distributors*, 941 F. Supp. at 1578.

Moreover, United's statements are not actionable as defamation *per se* because those statements did not impute to Sheridan any conduct incompatible with the proper exercise of its lawful business.   Contrary to Sheridan's characterization, United stated that "patients *may* become subject to balance billing by non-participating physicians."  *See* Am. Compl. at Ex. E (emphasis added).  United's actual statement bears little resemblance to Sheridan's allegation that United stated that "Sheridan will improperly balance bill patients if physicians refer patients to Sheridan after September 18, 2007."  *Id.* at ¶ 143(g).  Furthermore, in addition to being a licensed HMO under Chapter 641, United "provides insurance and administrative services to managed health care and related health benefit plans."  Am. Compl. at ¶ 6.  Because United also engages in insurance, it would not be per se illegal for a non-participating provider to balance bill a United member.   Since United's statement about balance billing does not on its face suggest that Sheridan will wrongfully balance bill its members, Sheridan's defamation *per se* claim must be dismissed with prejudice.

**E.    SHERIDAN'S MISAPPROPRIATION OF TRADE SECRETS CLAIM IS FATALLY FLAWED AND MUST BE DISMISSED**

To state a claim under Florida's Uniform Trade Secrets Act ("FUTSA"), a plaintiff must allege that: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knows or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it."  *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1291 (S.D.

Fla. 2001). Sheridan's misappropriation claim fails because the Amended Complaint makes clear that: (1) Sheridan did not take reasonable steps to protect is alleged "trade secrets" and (2) Sheridan has not alleged any facts showing that Defendants engaged in any actions that would constitute the acquisition or disclosure of a trade secret under FUTSA.

To qualify as a trade secret, information must derive independent economic value from not being generally known *and* must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Fla. Stat. § 688.002(4)(b). Sheridan alleges that its negotiated reimbursement rates are "closely guarded and are not readily ascertainable to the public" and that it enters into "contracts with confidentiality provisions." Am. Compl. at ¶ 181. But the LOA attached to the Amended Complaint contradicts that allegation because it *does not* contain a confidentiality provision. This fact alone is sufficient to show that Sheridan does not require contracts with confidentiality agreements and, as a result,  Sheridan has not made reasonable efforts to protect its allegedly confidential information.[37]  Moreover, in its original complaint in this action, Sheridan did not file the LOA under seal, thereby making them part of the public record. Indeed, Sheridan only filed its "closely guarded" negotiated reimbursement rates under seal after *United*, not Sheridan, moved the State Court to make records confidential. *See* Am. Compl. at 5 n.1. The exhibits and Sheridan's actions in this litigation show that Sheridan has not taken *any* efforts, let alone reasonable ones, to protect its allegedly confidential information.[38]

Even if Sheridan's reimbursement rates could be considered trade secrets, its misappropriation claim fails because Sheridan has not alleged any facts to suggest that either

---

[37] *See, e.g., Sterpetti v. E-Brands Acquisition, LLC*, No. 6:04-CV-1843, 2006 WL 1046949, at *9 (S.D. Fla. 2006) (holding that plaintiff did not take reasonable efforts to maintain the secrecy of his alleged trade secret in part because he did not enter into any written or oral confidentiality agreements).

[38] *See* Fla. Stat. § 688.002(4); *Sterpetti*, 2006 WL 1046949 at *9; *Del Monte*, 136 F. Supp. 2d at 1291.

United or Ingenix wrongfully acquired its alleged trade secrets. To show wrongful acquisition, Sheridan must allege facts showing that the Defendants knew or had reason to know that the alleged trade secrets were obtained by improper means. Improper means is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *See* Fla. Stat. § 688.002(1). While Sheridan alleges that the Ingenix "improperly acquired" its negotiated reimbursement rates because payers who provided those rates to Ingenix "were under a duty not to disclose such information," Am. Compl. at ¶ 182, it does not allege that Ingenix *knew or had reason to know* that payers were violating their duty when they allegedly disclosed Sheridan's reimbursement rates.[39] Absent such an allegation, Sheridan cannot state a claim for misappropriation of its alleged trade secrets.

Because Sheridan has not alleged facts showing that Defendants wrongfully acquired or disclosed trade secrets, Sheridan's misappropriation claim must be dismissed.

**F.     SHERIDAN'S CLAIM FOR VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT MUST BE DISMISSED**

**1.     Sheridan's FDUTPA Claim Is Preempted By Florida's Uniform Trade Secrets Act**

Fla. Stat. § 688.008 expressly provides, in relevant part, that Florida's Uniform Trade Secrets Act "displace(s) conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." Fla. Stat. § 688.008(1); *see Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (FUTSA "preempts all claims based on misappropriation of trade secrets"). In order to determine whether there is FUTSA preemption under Fla. Stat. § 688.008(1), the relevant inquiry is whether there is a "material distinction" between the allegations asserted in support of the claims in question and

---

[39] *See* Fla. Stat. § 688.002(2)(a) (defining misappropriation as the "[a]cquisition of a trade secret of another by a person who *knows or has reason to know* that the trade secret was acquired by improper means").

those asserted in support of the FUTSA claims.  *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1181 (M.D. Fla. 2005) (noting that claims for "deceptive and unfair trade practices, fraud, and negligent misrepresentation . . . will be dismissed if they contain no material distinction from the FUTSA claim"); *see also Allegiance Healthcare*, 232 F. Supp. 2d at 1336 (finding FUTSA preemption of unfair competition claim).

In the present case, Sheridan's claim for violation of FDUTPA is premised on Ingenix's alleged collection and manipulation of "commercially-sensitive and proprietary data" including Sheridan's reimbursement rates for health care services rendered to patients.  *See* Am. Compl. at ¶¶ 165-167.  The underlying allegations of wrongdoing asserted by Sheridan in support of its FDUTPA claim also comprise the basis for its FUTSA claim.  *See* Am. Compl. at ¶¶ 178-186 (alleging that Defendants have improperly disclosed "Sheridan's proprietary negotiated reimbursement rates").  Moreover, Sheridan realleges paragraphs 1 through 113 in support of both its FDUTPA and FUTSA claims.  As a result, there is no material distinction between Sheridan's FUTSA and FDUTPA claims, making FUTSA preemption of Sheridan's FDUTPA claim appropriate and requiring dismissal.  *See, e.g.*, Fla. Stat. § 688.008(1); *Allegiance Healthcare Corp.*, 232 F. Supp. 2d at 1336; *see also Am. Honda*, 390 F. Supp. 2d at 1181.

### 2.      Sheridan Has Failed To Adequately Plead A Violation Under FDUTPA

Even assuming Sheridan's FDUTPA claim is not preempted by FUTSA, the claim nevertheless fails because Sheridan has failed to adequately plead two of the three necessary elements of a FDUPTA claim.  In order to establish its FDUTPA cause of action, Sheridan must allege that it was injured "as a result of" Ingenix's commission of an "[u]nfair method[ ] of competition, unconscionable act[ ] or practice[ ], [or] unfair or deceptive act[ ] or practice[ ]."  Fla. Stat. §§ 501.204(1), 501.211(2).  Thus, a "consumer claim for damages under . . .

(FDUTPA) has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages."[40]

First, Sheridan has not alleged a recoverable loss under FDUTPA.   For purposes of recovery under FDUTPA, "actual damages" do not include consequential damages.[41]  Therefore, there can be "no recovery of lost profits under the FDUTPA because lost profits are the 'quintessential example of consequential damages.'"  *Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999).  In *Rollins, Inc. v. Heller,*[42] the court defined actual damages under FDUTPA as the economic diminution in value of a product or service purchased.  Further, "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment."  *City First Mortgage Corp. v. Barton,* 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland,* 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

The Amended Complaint makes clear that Sheridan seeks lost profits, not actual damages.  For example, it alleges that Ingenix manipulated the data to "drive down ... *the rates Sheridan and other heath providers are paid...*"   Am. Compl. at ¶ 167 (emphasis added). Sheridan appears to be suing for the difference between the "artificially–reduced 'usual and customary' or 'reasonable and customary'" reimbursement rates remitted by United and other payers and the rates that Sheridan claims it is entitled to receive for services provided as an out-of-network provider.  *See* Am. Compl. at ¶ 166.

---

[40] *City First Mortgage Corp. v. Barton,* 988 So. 2d 82, 86 (Fla. 4th DCA 2008) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2nd DCA 2006)) (emphasis added).

[41] *See Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,* 715 So. 2d 311, 314 (Fla. 4th DCA 1998); *Kia Motors Am. Corp. v. Butler,* 985 so. 2d 1133 (Fla. 3d DCA 2008).

[42] 454 So. 2d 580, 585 (Fla. 3d DCA 1984), *review denied*, 461 So. 2d 114 (Fla. 1985).

Moreover, Sheridan cannot state a claim under FDUTPA because its prospective losses are too speculative. In *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88 (Fla. 3d DCA 1997), the plaintiff alleged a FDUTPA violation because a radio station prematurely ended a contest, thereby depriving the plaintiff of the opportunity to compete for a $2 million prize. The appeals court upheld the trial court's dismissal of the plaintiff's complaint for failure to state a claim, and reaffirmed that "speculative losses" cannot give rise to a claim under the Act. *Id.* at 90. FDUTPA does not allow Sheridan to recover its lost profits in this instance, nor any speculative damages Sheridan somehow claims are the result of alleged actions taken by Ingenix which "(i) strengthen the United companies' competitive power in the health care services market, (ii) drive down the cost of benefits United provides for its members, the care patients receive and the rates Sheridan and other health care providers are paid (iii) and increase its profits." Therefore Sheridan's claim for violations of FDUTPA must fail.

Finally, to survive a motion to dismiss, Sheridan must plead "sufficient facts to show that [it has] been actually aggrieved by the unfair or deceptive act *committed by the seller* in the course of trade or commerce."[43] Sheridan alleges that Ingenix sells data to "various businesses of UnitedHealth Group [and] other health plans, insurers, self-funded employers, providers and the greater health care industry in general." *See* Am. Compl. at ¶ 163. But the injury alleged by Sheridan, *i.e.* the alleged use of an artificially deflated rate of payment, is not a result of Ingenix's alleged sale of data to third parties. Because Sheridan has failed to establish the proximate causation element of FDUTPA, Fla. Stat. § 501.211(2), its FDUTPA claim must be dismissed.

---

[43] *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1317 (M.D. Fla. 2000) (emphasis added); *Macias*, 694 So. 2d at 90.

## G.   SHERIDAN'S CLAIM FOR DECLARATORY RELIEF MUST BE DISMISSED

A court's grant of relief under the declaratory judgment act is "discretionary with the court, and [is] not the right of a litigant as a matter of course." *Kelner v. Woody*, 399 So. 2d 35, 37 (Fla. 3d DCA 1981). "Declaratory judgment is appropriate only when there is an actual controversy before the court; a court otherwise lacks jurisdiction." *Yell v. Healthmark of Walton, Inc.*, 772 So. 2d 568, 570 (Fla. 1st DCA 2000). Taking the allegations in the Amended Complaint as true, the real issue is whether an implied-in-fact contract exists, not Sheridan's supposed "doubt as to its legal rights and obligations regarding the fee to be paid by United."

The Amended Complaint alleges that the terms of the alleged implied-in-fact contract are clear and unambiguous. Am. Compl. at ¶ 68 ("The terms of the Continuing Offer are clear and unambiguous"). As a result, Sheridan's claim for declaratory judgment must be dismissed with prejudice.[44] *See, e.g., Kelner*, 399 So. 2d at 37-38 ("Although appellants have stated as a conclusion that they are in 'doubt' as to their rights under the agreements, the amended complaint shows on its face that there is no doubt as to the meaning of the [contracts]").[45]

---

[44] Moreover, Sheridan's claim for declaratory judgment must be dismissed because it is preempted by ERISA, for the same reasons set forth more fully in Pt. A(1) requiring dismissal of Sheridan's claim for breach of implied-in-fact contract.

[45] *See also Abruzzo v. Haller*, 603 So. 2d 1338, 1339 (Fla. 1st DCA 1992) (holding that it is inappropriate for a plaintiff to use the declaratory judgment act to ask the court for a "determination of factual issues bearing on [Plaintiffs'] and the [Defendants'] liability"); *Porkolab v. Smithbay Homes, Inc.*, 640 So. 2d 195, 197 (Fla. 3d DCA 1994) (dismissing a declaratory judgment action because "the contract is clear and unambiguous and presents no need for construction"); *Coral Gates Props. v. Hodes*, 59 So. 2d 630, 633 (Fla. 1952) (holding that a declaratory judgment was not available because "the real purpose of the suit was to obtain a money judgment for the claimed real estate commissions under an alleged oral contract. A mere reading of the bill is sufficient to demonstrate that the plaintiff knew exactly what he claimed to be the terms of the alleged oral contract and what he had earned thereunder.").

## CONCLUSION

FOR THE FOREGOING REASONS, Defendants respectfully request that the Court enter an Order dismissing the Amended Complaint and granting any further relief that it deems just, fair and equitable.

Dated: February 27, 2009

Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Tel. (305) 577-3100
Fax. (305) 374-7159


By:_____/S/ Edward Soto_____ ____
    Edward Soto (FBN 265144)

**Attorneys for United Healthcare of Florida, Inc. and Ingenix, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically with the Clerk of the

Court using CM/ECF on 27th day of February, 2009.  As such, the foregoing was served upon all

counsel of record on February 27, 2009.

<div style="margin-left:40%">

**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Tel:    (305) 577-3100
Fax:    (305) 374-7159


By:____/S/  Robert Clayton Roesch_____
      Robert Clayton Roesch (FBN 0013931)

</div>